47 CCPA

**Application of Alexander E. CHARLTON.**

**Patent Appeal No. 6510.**

United States Court of Customs and Patent Appeals.
June 1, 1960.

---

Des Jardins, Robinson, Tritle & Schenk, Cincinnati, Ohio, Estabrook & Philpitt, William T. Estabrook, Washington, D. C. (Edward M. Tritle, Cincinnati, Ohio, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge C. WILLIAM KRAFT, Jr.[*]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 20–29. On appeal to the board these claims were substituted for finally rejected claims 2–14 and 16–19 in appellant's application serial No. 340,825, filed March 6, 1953, entitled "Translucent Objects Decorated with Designs or Images." No claims were allowed.

At the hearing counsel for appellant withdrew claims 27 and 28. The rejection of these claims is therefore affirmed.

The invention relates to decorated articles, "such as glass, china, earthenware, porcelain-enamel or metal," and methods for making them. It has to do with applying designs or the like by means of colored pigments fused to the article or base.

Claim 20 is representative of the various embodiments in article claims 20–23 and 25, claim 26 being representative of the method claims 26 and 29. They read [emphasis ours]:

"20. A fired decorated object comprising a translucent base, a design for the base of coloring material comprised essentially of colored fireable pigment, *free of flux*, a colored background for the design, and a transparent glaze layer on said design and colored background fused to the base.

"26. The method of photographically decorating transparent objects comprising photographically decorating the object with a pigmented light sensitized design, which is *free of flux*, adjacent a colored background layer containing flux, and fusing the pigmented background to the object by means of the flux contained within the pigmented background."

Claim 24 is directed to a different aspect of the invention utilizing two light sensitized layers in making the design and reads [emphasis ours]:

"24. A fireable photographically decorated object comprising a translucent base, a colored background layer applied thereto, a *photographic design formed in a fireable pigmented light sensitized layer superimposed on a non-pigmented burnable light sensitized layer* applied to the colored background layer, and a fusible protective layer over the photographic design."

The application says that prior art vitrified coloring material often contains ninety per cent flux [1] and ten per cent

---

1. The applicant's brief uses the terms flux and frit interchangeably to indicate a material which aids in fusing the design pigments to the base and also provides a glaze on the decorated article. The specification defines "flux" as "a soft glass

coloring pigment and that the high flux percentage dilutes the effectiveness of the coloring pigments when the decorated object is fired. This dilution is especially apparent when the base is transparent or translucent, allowing light to shine through, or when the design is formed by a photographic process, the layer of coloring material in the latter case being relatively thin (.001 to .003 inches). The application discloses that appellant's concept is to increase the effectiveness, brightness, and intensity, of the coloring material by reducing the proportion of flux or eliminating it altogether. While the only specific proportion mentioned in the specification is that found in the discussion of the prior art, "as much as 90% flux," the application does say that the color layer of the invention has "little if any flux." It also says "if there be any flux in the design it will fuse with that in the overlay layer;" "That any carrier or binding medium for the coloring material, [is] in addition to or in lieu of flux" and "in all the embodiments, the design is made from colored material having a maximum brightness and intensity, there being only a small amount of flux, if any, used with the pigments." The flux which may be necessary for fusing and glazing the design, is supplied from a separate layer of flux applied over the design or from a colored background, dilution of the background color apparently not being objectionable to the applicant. The application indicates that the design may be applied "in any manner, such as rubber stamping, transfers and the like" or by a photographic process.

As to the design formed photographically by the use of two light sensitive layers, recited in claim 24, all the application says, is:

"The design applied by the method of my application is particularly suitable, since it is formed in two separately applied light sensitive layers, the first applied layer being free of the pigment and the second

ground to a very fine mesh or powder, * * * which, upon being fired to melting temperature, will fuse itself to the

applied layer containing pigment. Consequently, the design is brighter and more intense, as well as being sharper and in finer detail than conventionally applied designs as there will be no objectionable shaded background."

The examiner and the board relied on three references:

Schulz 1,898,500 Feb. 21, 1933.
Matthes 2,216,017 Sept. 24, 1940.
Staehle 2,472,128 June 7, 1949.

Schulz applies a multicolored design to vitreous enamel products by a process requiring only one firing of the design. A base coat is applied to a metal base plate; and the object fired. A ground coat of white or colored vitreous enamel is then applied. To this the colors, usually oxides in powdered or dry form, are added by brush or stencil, a different stencil being used for each color. As to the composition of the coloring material the patent states:

"Where the color has been applied lightly the frit content of the unfired enamel base coat will be sufficient to glaze over the color to give a glossy surface. To increase the glossiness the oxide colors may first be mixed with a certain percentage of powdered enamel or other vitreous material to add frit element to the base coat enamel while it is being fired.

\* \* \* \* \* \*

"With my process the color oxides in the form of dry fine powder are applied directly to the unfired enamel coating *or* mixtures of oxides and glazing materials are applied." [Emphasis ours.]

Matthes also is concerned with a single firing operation using a wet enamel process to apply a decorated design to a metal plate. The single firing is desirable to prevent color fading which normally occurs if the colors are fired several times. An exemplary embodiment is as follows:

colored oxide particles for imprisoning them in a glass surface."

"I start with a metal base upon which one ground coat and one or two cover coats of enamel have been applied, this ground coat being a vitreous enamel coating fused to the metal base. I then may apply a fine 'wash coating' of frit over the surface to which other colors are to be applied; this wash coating may contain some coloring matter or it may be white.

\* \* \* \* \* \*

"Upon this coating I then apply the design or colors with a coating comprising either frit alone, or a composition of frit and coloring matter mixed up with a vehicle to give the coating the necessary tackiness, so that it can be applied to the base sheet.

\* \* \* \* \* \*

"The word 'coating' as used herein does not necessarily mean a complete covering of the article, but may be the covering of a portion only of the whole of a surface."

The article is then finally dried. Matthes then describes in greater detail the manner of preparing the color coating composition.

"Particular care must be exercised in preparing the color coat prior to its application to the article. In doing this I start with metallic oxides which are well known to the trade for coloring porcelain enamel and these are mixed with colored or clear frit. The percentage of the mixture depends on the color and fusibility desired and in some cases either colored or clear frit can be used alone. In my coating mixture I use preferably 20 parts of frit to 80 parts of metallic oxides, however, this can be varied, but the ratio of oxide to frit is always kept greater than that used in ordinary wet enameling practice, which uses 95 to 98% frit and from 5 to 2% of metallic oxide."

By slight modifications in the process, the design may be applied by brushing, sponge or dauber, or even by "a printing press using rubber, metal or other common kinds of type."

Staehle is the only reference which relates to photographically reproducing a design. A priming coat is first applied to the ceramic object that is to be decorated. This priming may contain a yellow dye which permits a visual indication of areas not coated with primer, the dye also acting as a blue-absorbing base for a light-sensitive, pigmented design layer that is applied over the primer. Staehle describes the particular composition of the light-sensitive or photographic layer, how it is made, applied, exposed and developed, leaving a colored design on the primer. The patent also states that a clear glaze, customarily employed in the art, is then placed over the decorated object to produce an overglaze when the article is fired.

The examiner and the board were of the opinion that the claims depend for patentability on the "free of flux" color layer, concluding that they were unpatentable over Schulz and Matthes. The board was not persuaded that appellant's invention resided in the complete elimination of flux from the color pigments but merely a reduction thereof, complete elimination being merely a matter of degree.

As to this aspect of the claims, we agree with the board's conclusion. In the first place, the application is directed to obtaining undiluted color layers by a reduction in flux percentage, the ultimate apparently being a complete elimination of flux. Even assuming, arguendo, that the invention is limited to a free-of-flux color layer, Schulz would anticipate this feature. Schulz was concerned with obtaining a good overglaze or glassy surface during his single firing process. Although he does say that if the frit content in the base coat is insufficient to obtain a proper overglaze, frit should be mixed with the color oxides to obtain the

desired gloss, he did recognize that in some instances the frit content of the base coat would be sufficient. Nor does this detract from his statement that oxides *or* mixtures of oxides and glazing materials may be applied to the unfired, enamel, base coat.

Also, Matthes, who states that his color coating mixture is 20 parts frit and 80 parts metallic oxides and that these percentages depend on the color and fusibility desired, certainly suggests a flux reduction. The application says that the prior art uses ninety per cent flux. Any additional frit which Matthes may require for fusing and glazing the design apparently could be supplied, as by Schulz and appellant, from the wash coat which Matthes says may be used. Matthes suggests to one skilled in the art that, depending on the desired color, the frit necessary for fusing and glazing, and the available flux in the wash or the base coat, the flux to pigment ratio in the color layer can be varied. We do not think appellant's choice of a color layer "substantially free from flux" or "free of flux," as recited in the claims would have been unobvious to one having ordinary skill in the art.

Appellant also urges that his free-of-flux coloring layer *in combination with a translucent base* is novel and hence patentable. Obviously, an undiluted color layer would be more effective than one diluted with flux when decorating a translucent base, such as a bottle, for example. But the prior art teachings of a color layer which is free of flux coupled with appellant's admitted equivalency of china, glass, earthenware, porcelain-enamel or metal as a base for his design make the combination obvious. The undiluted pigments would provide a truer, brighter color design regardless of the base material used.

Matthes, Schulz and appellant refer to well known means (brushes, stencils and stamping, for example) by which a free-of-flux color design may be formed. Photographic decoration, as broadly recited in claim 26, is shown by Staehle and is merely another known means by which one having ordinary skill in the art could form a colored design.

Since article claims 20–21 and 25, and method claims 26 and 29 depend for patentability on the free-of-flux limitation which we consider an unpatentable feature, the board's rejection as to these claims is affirmed. Furthermore, the glaze layer overlying the design is clearly taught by Schulz and such a layer is referred to in Staehle as being "customarily employed in the art." Patentability cannot be based on the use of this conventional feature.

Claim 24 does not recite a free-of-flux color layer. It relies for patentability on the limitation to a "photographic design formed in a fireable pigmented light sensitized layer superimposed on a non-pigmented burnable light sensitized layer." This is said to contribute to a "design [which] is brighter and more intense, as well as being sharper and in finer detail than conventionally applied designs as there will be no objectionable shaded background." The intermediate burnable, non-pigmented, light-sensitized layer, sandwiched between the colored design and the colored background, would isolate the colors, preventing undesirable mixing and shading. There is nothing in the record which even remotely suggests the light sensitive, non-pigmented intermediate layer. We cannot agree with the Patent Office Solicitor's contention that since Staehle's primer may contain a dye and since all dyes are known to fade in sunlight, that the primer coat may be considered a light-sensitized layer as called for by claim 24. Such a construction of claim 24 is unreasonable. "Light sensitized" in the claim has reference to materials subject to photographic processes and does not include materials which merely fade. The rejection of claim 24 is reversed.

The decision of the board is affirmed as to the rejection of claims 20–23 and 25–29 but is reversed as to claim 24.

Modified.